The Honorable Jay Bradford State Senator P.O. Box 8367 Pine Bluff, Arkansas 71611
Dear Senator Bradford:
This official Attorney General's opinion is issued in response to your recent inquiry regarding certain issues related to a city's use of its advertising and promotion tax fund.[1] You have asked:
 (1) Is it permissible in any manner for a city to use its advertising and promotion tax income to contribute to the construction of a football stadium for a state university?
 (2) Is it permissible for a city to reimburse from general funds its advertising and promotions commission or civic center complex commission for any shortfall caused by the type of contribution referenced in Question 1 above?
 (3) Is there any manner in which a city could help fund the construction of a football stadium for a state university?
RESPONSE
Question 1 — Is it permissible in any manner for a city to use itsadvertising and promotion tax income to contribute to the construction ofa football stadium for a state university?
It is my opinion, as explained more fully below, that the answer to this question will depend upon whether a contribution to the construction of a football stadium for a state university is an expenditure that would normally be made from the city's general revenues. If such a contribution is determined not to be an expenditure that would normally be made from the city's general revenues, it is my opinion, as also explained below, that given the broadly stated purpose of the advertising and promotion fund, and in light of the broad discretion that is given to the city's Advertising and Promotion Commission, the commission could determine that this use of the advertising and promotion tax is appropriate.
Expenditures Normally Made From General Revenues
A primary restriction on the use of the advertising and promotion tax revenues is that such revenues may not be used for expenditures that are normally paid from the general revenues of the city. This prohibition is set forth in A.C.A. § 26-75-606(c)(4), which states:
 The authorization and limitations contained in this subsection shall be reasonably construed so as to provide funds for promoting and encouraging tourism and conventions while not allowing such special revenues to be utilized for expenditures that are normally paid from general revenues of the city.
A.C.A. § 26-75-606(c)(4) (emphasis added).
The question of whether a particular expenditure constitutes one that would normally be paid from the general revenues of the city is clearly a question of fact that will depend both on the specific expenditure and on each city's normal practice. Because of the fact-specific nature of such a question, I cannot opine generally or definitively in response to Question 1.
Expenditures Not Normally Made From General Revenues
Nevertheless, I do note that if it should be determined that a contribution to the construction of a football stadium for a state university is an expenditure that would not normally be made from the city's general revenues, the city's Advertising and Promotion Commission has the discretion to determine that the contribution is an appropriate use of the advertising and promotion tax.
The use of advertising and promotion funds is governed by A.C.A. § 26-75-606. That statute states an acceptable general use of the fund, as follows:
 All funds credited to the city advertising and promotion fund pursuant to this subchapter shall be used for advertising and promoting the city and its environs . . . in the manner as shall be determined by the city advertising and promotion commission.
A.C.A. § 26-75-606(a)(1).
This general purpose of the funds is reiterated in A.C.A. §26-75-606(c)(4):
 The authorization and limitations contained in this subsection shall be reasonably construed so as to provide funds for promoting and encouraging tourism and conventions. . . .
A.C.A. § 26-75-606(c)(4).
Finally, the statute states certain acceptable specific uses of the fund, as well as certain specific uses that are prohibited. See A.C.A. §26-75-606(a)(1), (b)(1), (b)(2), and (c)(2).
The particular use about which you have inquired (contribution to the construction of a football stadium for a state university) does not fall within any of the specifically mentioned acceptable uses of the fund, nor within any of the specifically mentioned prohibited uses of the fund. However, it could conceivably fall within the acceptable general use of the fund that is stated in sections (a)(1) and (c)(4).
The question of whether a particular use of the fund constitutes a use that advertises and promotes the city, or that promotes and encourages tourism, is one that the city's advertising and promotion commission is given the authority to determine. Section (a)(2) of A.C.A. § 26-75-606
states: "The commission is the body that determines the use of the city advertising and promotion fund." It is not inconceivable that the commission, in its discretion, might determine that a contribution to the local state university's football stadium would have the effect of promoting the city and encouraging tourism in the city.
I have previously opined that a decision made by the commission pursuant to this explicitly-granted authority will be accorded considerable weight if challenged. See Ops. Att'y Gen. Nos. 96-050 and 92-064.
I must therefore conclude that if a contribution to the construction of the football stadium for a state university is factually determined to be an expenditure that would not normally be made from the city's general revenues, the commission, using its broad, statutorily-granted discretion, could determine that such a contribution is an appropriate use of the advertising and promotion fund.
Question 2 — Is it permissible for a city to reimburse from general fundsits advertising and promotions commission or civic center complexcommission for any shortfall caused by the type of contributionreferenced in Question 1 above?
It is my opinion that it is not permissible for a city to reimburse its advertising and promotion fund from the city's general fund for any shortfall caused by the type of contribution referenced in Question 1 above.
As discussed in response to Question 1, a contribution to the construction of a football stadium for a local state university cannot be made in the first instance from the advertising and promotion fund if such an expenditure is one that would normally be made from the city's general revenues. A.C.A. § 26-75-606(c)(4). A reimbursement of the advertising and promotion fund from the city's general fund would indicate that the expenditure is one that could normally be made from the city's general revenues. The contribution, accordingly, could not have been made in the first instance using the advertising and promotion fund. A reimbursement from the city's general fund would defeat this explicit limitation on the use of the advertising and promotion fund, and is therefore impermissible.
Question 3 — Is there any manner in which a city could help fund theconstruction of a football stadium for a state university?
In addition to the above-discussed permissible contributions to the university, the General Assembly, in A.C.A. § 14-58-504, has provided an explicit means by which cities can provide certain limited types of financial assistance to state universities. It should be noted that this provision contains explicit limitations, as noted below:
 (a) Cities of the first or second class and incorporated towns in the State of Arkansas shall be empowered and authorized annually to grant financial aid to any state-supported college or university which is located in the city or town or which has facilities located within the city or town. The grant of financial aid shall be for the purpose of aiding or assisting the college or university in retiring any bonded indebtedness on any building or facilities within the city or town or for the purpose of paying for the operating expenses of the college or university for programs or facilities located within the city or town.
 (b)(1) The governing body of the city or incorporated town granting financial aid to a state-supported college or university shall do so by ordinance, which shall specify the time and amount of the payments to be made, the name of the college or university receiving the funds, and the source of the funds.
 (2) The ordinance shall not be effective for more than a twelve-month period of time.
 (c) The financial aid granted and paid to the state-supported college or university shall be paid out of donations or gifts received by the city or town for general purposes. No moneys of the city or town arising from a tax levied for a specific purpose shall be used for any grant of financial aid to a college or university, unless the tax has been levied for the specific purpose of granting financial aid to the college or university.[2]
A.C.A. § 14-58-504 (emphasis added).
If the city seeks to utilize this provision as a means of assisting the university with the construction of the football stadium, it must be mindful of the following limitations: (1) The funds can only be used to retire the university's bonded indebtedness on the stadium, or to pay the university's operating expenses for the stadium. (2) The city's grant of the financial assistance must be done by way of an ordinance stating the time and the amount of the payment to be made to the university. (3) The ordinance granting the assistance cannot be effective for more than a 12-month period of time. (4) The city funds to be contributed to the university must come from either (a) donations or gifts received by the city for general purposes, or (b) a tax levied for the specific purpose of granting financial assistance to the university.
If the city's desire to aid in the construction of the football stadium can be structured within the above-described limitations, the city can then contribute to the construction under the authority of A.C.A. §14-58-504.
In addition to the mechanism set forth in A.C.A. § 14-58-504, the legislature has provided another, more generally stated means by which cities can assist universities. A.C.A. § 14-58-505 states:
 (a) Incorporated towns and cities of the first or second class, pursuant to an ordinance properly and lawfully adopted by their governing bodies, are empowered and authorized to annually grant financial aid to any public post-secondary educational institution located within their borders for the purpose of assisting the institution in paying its lawful expenses of operation.
 (b) The ordinance shall be effective for a period of twelve (12) months.
Under this section, the funds can be used only to assist the institution in paying its operation expenses, and the ordinance providing the assistance can be effective only for twelve months.
Finally, another means by which assistance of this nature has been provided in the past is through the mechanism of an interlocal agreement between the interested parties, pursuant to A.C.A. § 25-20-104. For example, the City of Fayetteville and the Board of Trustees of the University of Arkansas entered into an interlocal agreement of this nature for the purpose of constructing, operating, and managing the Walton Arts Center in Fayetteville. See Op. Att'y Gen. No. 93-377, in which my office approved the interlocal agreement between the parties for this purpose.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Suzanne Antley.
Sincerely,
WINSTON BRYANT Attorney General
WB:SBA/cyh
[1] Your opinion request also presented questions regarding certain city-related issues that are unrelated to the advertising and promotion tax questions. Those questions are addressed separately in Attorney General Opinion No. 96-325.
[2] It is my opinion that the limitations stated in section (c) do not operate to prohibit the use of the advertising and promotion fund for the purpose of assisting the university. I base this conclusion on the fact that the advertising and promotion commission can, in its discretion, determine that assistance to the university is, in fact, one of the purposes for which that tax is levied. It is my opinion that the limitation of section (c) was intended to prohibit the diversion to a university of revenues resulting from taxes that were levied for an explicitly non-university purpose.